**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | : | CHAPTER | 7 |
| | : | | |
| DONGHIA, INC | : | CASE NO. | 20-30487 (JJT) |
| | : | | |
| DEBTOR. | : | ECF NOS. | 45, 67, 70, 71, 104 |
| | : | | |

**RULING ON CHAPTER 7 TRUSTEE'S EXPEDITED OMNIBUS MOTION FOR AUTHORITY TO REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY, AND TO ABANDON PERSONAL PROPETRY LOCATED ON LEASED PREMISES, RETROACTIVE TO THE PETITION DATE**

I.  INTRODUCTION

Before the Court is the Chapter 7 Trustee's ("Trustee") Expedited Omnibus Motion for Authority to (I) Reject Unexpired Leases of Nonresidential Real Property, and (II) Abandon Personal Property Located on Leased Premises, Retroactive to Petition Date (the "Motion," ECF No. 45), which was filed on April 29, 2020. Over the objection of four landlords (the "Landlords"),[1] the Trustee seeks, pursuant to Sections 365 and 554(a) of the Bankruptcy Code and Rules 6006, 6007 and 9014 of the Federal Rules of Bankruptcy Procedure, to retroactively reject (to the date of the petition) nine commercial leases (the "Leases")[2] at various locations throughout the country where Donghia, Inc. (the "Debtor") conducted business.

Additionally, the Trustee seeks to abandon certain non-excluded personal property of the Debtor which is located at various locations "after [a] significant investigation … [whereby she]

---

[1] In the present case, the objecting landlords are D&D Building Company LLC, Design Center of the Americas LLC, Pacific Design Center 1 LLC, and Ohio Design Centre LLC.

[2] According to the Trustee, as of the Petition Date, the Debtor maintained commercial leases in New York, New York; West Hollywood, California; San Francisco, California; Atlanta, Georgia; Las Vegas, Nevada; Dania, Florida; Dallas, Texas; Cleveland, Ohio; and Costa Mesa, California (which was utilized as a sales office).

determined that the costs associated with moving the [p]ersonal [p]roperty to other locations, storage of such property pending a sale, and the potential administrative expenses for use and occupancy of the leased premises in which the [p]ersonal [p]roperty is located would likely far exceed the liquidation value of the [p]ersonal [p]roperty or any potential benefit realized by the bankruptcy estate." An expedited hearing on the Motion was held on May 11, 2020, where the Trustee, the Debtor, certain landlords, secured lenders, the U.S. Trustee and other various parties in interest argued the Motion. For the reason stated herein, the Motion is hereby GRANTED in part and DENIED in part.

## II. BACKGROUND

The Debtor filed a voluntary petition seeking bankruptcy protection under Chapter 7 of the United States Bankruptcy Code on March 30, 2020. The Debtor is a high-end designer and fabricator of custom furniture. While the production and delivery of the Debtor's product largely took place offsite at fabrication and holding facilities, where the products were produced, then warehoused and then shipped directly to customers, the Debtor's business model utilized numerous showrooms across the country in design focused commercial spaces so to display its products to design professionals from various fields. Although not utilized in the Debtor's production chain, the showrooms constituted a significant cost to the Debtor due to the location and high-end nature of the leasehold space. As of the May 11 hearing, according to the representations made by the parties, the Debtor is not presently a going-concern and has ceased its business operations.

## III. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28

U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

IV. DISCUSSION

In the Motion, the Trustee argues that rejection of the leases, which are burdensome, is in the best interests of the estate. Specifically, the Trustee contends that "the Leases are not necessary for the administration of the estate and instead pose a substantial financial burden due to the significant monthly rent obligations owed thereunder," (the Motion, p. 6).[3] The Trustee further contends that "due to the COVID-19 pandemic, access to the Showrooms remains restricted at several locations . . . [and thus] [t]he Showrooms are . . . merely serving as storage spaces for the Debtor's personal property and providing no value whatsoever to the bankruptcy estate." In response, the Landlords objected in part, arguing that while the Trustee may properly reject the subject leases provided she obtains this Court's approval, the Trustee "should not be permitted to do so retroactively . . . [especially] while continuing to use the Premises on a going-forward basis as 'free storage.'" Objection, ECF No. 70, p. 2.

The rejection of executory contracts is typically governed by 11 U.S.C. § 365 of the Bankruptcy Code. Under Section 365, the trustee, subject to the court's approval, "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The purpose behind Section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1095 (2d Cir. 1993) (internal quotations and citations omitted). Generally, courts "approve motions to assume, assume and assign, or reject executory contracts

---

[3] While differing accounts relating to the total amount of pre-petition and post-petition rent were advanced at the hearing, under either account the Debtor's rent obligations for the subject leases are significant and financially unsustainable. Pre and post-petition efforts by the Debtor and the Trustee to sell the business or the Leases, which have extended terms, have heretofore proven to be unavailing.

3

or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Global Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (holding that Section 365 is traditionally subject to the "business judgment" standard). Courts will generally not second-guess a debtor's business judgment concerning whether an assumption or rejection benefits the debtor's estate. *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014). In the present case, neither the Trustee nor the Landlords have presented any compelling reason why the Court should second guess the Trustee's reasoned business judgment.

Turning to the equitable relief requested by the Trustee, i.e., that the date of the rejection be deemed retroactive to the date of the petition. The Trustee argues that the Debtor has since vacated its showrooms located in Atlanta and Dallas, but "due to widespread shutdowns of non-essential businesses as a result of the COVID-19 pandemic, the Debtor was unable to remove or relocate the [p]ersonal [p]roperty at all of the Showrooms before its filing . . . [and that] [a]ccess to certain Showrooms remains restricted [due] to the pandemic." ECF No. 45, p. 3.  The Trustee further argues that "this Motion was promptly filed approximately one month after the Petition Date and soon after the Trustee had a reasonable opportunity to review the Leases and obligations thereunder," *id.*, pp. 8-9, and that "[w]ithout such relief, the bankruptcy estate may still face substantial, unnecessary administrative claims by landlords for post-petition use and occupancy of the Showrooms and the Office which provide no benefit to the estate." *Id.,* 8.

While the Second Circuit has not ruled on the existence or scope of a bankruptcy court's equitable authority to order retroactive approval of rejection under § 365, courts that have held

that the authority exists have identified four relevant factors when considering whether "exceptional circumstances" justify retroactive rejection: (1) whether the motion to reject the leases was filed promptly; (2) whether the debtor promptly took action to set the motion for hearing; (3) whether the debtor had vacated the premises; and (4) whether the landlord had any improper motivation in opposing rejection of the lease *nunc pro tunc*. *See In re At Home Corp.*, 392 F.3d 1064, 1072 (9th Cir. 2004), *cert. denied sub nom. Pac. Shores Dev., LLC, v. At Home Corp.*, 546 U.S. 814 (2005). And although a number of other jurisdictions have concluded that such authority exists,[4] the United States Supreme Court's recent decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020), cautions that while "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders . . . to 'reflect the reality' of what has already occurred . . . [n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact. . . . Put plainly, the court cannot make the record what it is not." *Id.*, 701 (citations and internal quotation marks omitted).

Moreover, "a bankruptcy court's exercise of its residual equitable powers must be connected to, and advance the purposes of, specific provisions in the Code. *See, e.g., In re Hoffman Bros. Packing Co.*, 173 B.R. 177, 185–86 (9th Cir. BAP 1994) (invalidating *nunc pro tunc* order that contradicted an express Code provision)." *In re Thinking Machines Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995); *see also United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) ("While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with

---

[4] *See Pacific Shores Dev., LLC v. At Home Corp.* (*In re At Home Corp.*), 392 F.3d 1064, 1071 (9th Cir. 2004); *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp.* (*In re Thinking Machs. Corp.*), 67 F.3d 1021, 1028 (1st Cir. 1995).

the provisions of the Bankruptcy Code. That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."). Irrefutably, the current Covid-19 crisis has compounded the difficulties and challenges of all trustees in the administration of estates, especially in cases with this kind of complexity and where there is a lack of resources. All bankruptcy cases now confront public health restrictions and frozen business realities. Notwithstanding Congress's proactive efforts to blunt the adverse financial consequences of the current Covid-19 pandemic, there has been no modification to the Bankruptcy Code as to a bankruptcy estate's obligations to pay rent until a lease is assumed or rejected under 11 U.S.C. § 365(d)(3).

At the May 11 hearing, the Court heard various representations from the parties as to the circumstances giving rise to the Motion and the extent of the Debtor's and Trustee's efforts thereto. In particular, the Trustee and Debtor represented that significant efforts were made both pre and post-petition to vacate the various lease premises, but that those efforts were thwarted due to the Debtor's inability to access said premises, and as a result the Debtor's personal property still remains at a number of locations.[5] The Trustee also contended that any temporary delay in the filing of the Motion is excusable because, as opposed to a case under Chapter 11 where the Debtor knows and remains in possession of the estate, thus, creating continuity between the Debtor's pre and post-petition operations, the Trustee was required, with little notice, to orient herself to various complex issues involving a business that has ceased functioning and that implicated creditors and third parties in varying locations across the country

---

[5] While the Trustee's representations that the Debtor, in certain circumstances, was prevented from removing its property from some of the locations could potentially give rise to the inference that the Landlords' failure to provide access, in some way, is indicative of the Landlords' motivations, such a conclusion would require an evidentiary hearing on facts pertinent to each distinct location.

all during the height of the Covid-19 pandemic. These factors, the Trustee argues, justify the use of the Court's equitable powers in the present case.

It is certainly true that the Trustee now addresses a set of challenging business circumstances, only made worse by the current Covid-19 pandemic. It is also true, however, that while the Debtor has vacated certain locations, and that the Debtor was unable to remove certain personal property at certain locations, perhaps due, in part, to some, but not all Landlords. The uncontested facts are that the Debtor's business and property remain at a number of the leasehold premises. The Landlords bear no demonstrable culpability with regard to Covid-19 impediments nor has the Trustee demonstrated bad motives or acts. The Trustee's need to examine or test the value of the Leases and control the timing of the Motion is inherent in her responsibilities and to bankruptcy process generally. Given the aforementioned, the Trustee can only partially satisfy the factors set out in *In re At Home Corp.*, *supra*, 392 F.3d at 1072, and while those factors represent a mere starting point for the Court's consideration of whether to invoke its equitable powers, the fact that the Trustee can not meet them in their entirety is dispositive as to the request for retroactive relief in the present Motion.

Under these circumstances, a *nunc pro tunc* order rejecting the Leases as of the petition date is a particularly blunt instrument, one that would seem to disregard, not only the express language of section 365(d)(4), but the factual realities reflected in the record. The invocation of the Court's equitable powers should be reserved for those truly exceptional circumstances, and although the Trustee has made a diligent effort here, these circumstances, predicated on the proffer of the Trustee, do not rise to that level. That is not to say that the alleged or additional circumstances of this case that might be advanced by the Trustee couldn't give rise to cognizable claims, equitable adjustments, reductions, or defenses with respect to the full allowance of

administrative rent claims filed by the Landlords. That issue, however, can better and more fairly be addressed at a later date, with far greater precision, evidence and process than this Motion affords. Accordingly, the Motion is hereby GRANTED in part, but DENIED as to the Trustee's request for retroactive relief. A separate order on the Motion, consistent with this Ruling, shall also issue.

**IT IS SO ORDERED** at Hartford, Connecticut this 12th day of May, 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut