**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE No.      20-30487 (JJT) |
| | ) | |
| DONGHIA, INC. | ) | CHAPTER      7 |
|     Debtor. | ) | |
| | ) | RE: ECF Nos.   131, 132, 171, 199 |

**MEMORANDUM OF DECISION
ON THE TRUSTEE'S MOTION FOR RECONSIDERATION**

I.    INTRODUCTION

Before the Court is the Chapter 7 Trustee's (the "Trustee") Motion for Reconsideration (the "Motion," ECF No. 171) of the Court's Decision and Order (ECF Nos. 131 and 132) regarding the rejection of nine commercial leases (the "Leases") at various locations throughout the country[1] where Donghia, Inc. (the "Debtor") conducted business. The gravamen of the Motion is that the Court should now consider additional evidence and argument pertaining to its request for retroactivity, and, at minimum, reset the rejection date of the Leases to the date of the filing of the Trustee's Motion to Reject (ECF No. 45, the "Motion to Reject"), which was filed on April 29, 2020. In consideration of that request, the Court makes the following findings:

1.    On March 30, 2020 (the "Petition Date"), the Debtor filed a Chapter 7 petition in this Court. Thereafter, the Trustee embarked on an effort to sell the Debtor's business as a going concern and/or to schedule an auction for the sale of the Debtor's property.

---

[1] According to the Trustee, as of the Petition Date, the Debtor maintained commercial leases in New York, New York; West Hollywood, California; San Francisco, California; Atlanta, Georgia; Las Vegas, Nevada; Dania, Florida; Dallas, Texas; Cleveland, Ohio; and Costa Mesa, California (which was utilized as a sales office). The landlords of the leasehold properties in New York, West Hollywood, and Dania (the "Landlords") objected to the Trustee's Motion (ECF No. 199, the "Landlords' Objection").

2. On April 29, 2020, the Trustee filed a Motion to Reject, whereby she sought to retroactively reject (to the Petition Date) the Leases and to abandon certain non-excluded personal property of the Debtor located at various locations. The Court, *Tancredi, U.S.B.J.*, resolved the Trustee's Motion to Reject by an Order dated May 12, 2020 (ECF No. 131, the "May 2020 Order"), which was accompanied by a Memorandum of Decision (ECF No. 132, the "May 2020 Decision") issued simultaneously therewith.

3. The Court's May 2020 Decision granted in part and denied in part the Trustee's Motion to Reject. Therein, the Court agreed with the Trustee that she had made a "reasoned business judgment" to reject the Leases, *id*. at p. 4, but denied the Trustee's request for retroactive rejection of the Leases to the Petition Date. *Id.* at pp. 4-8.

4. In particular, the Court, while noting that "the Second Circuit has not ruled on the existence or scope of a bankruptcy court's equitable authority to order retroactive approval of rejection under § 365[,]" *id.* at p. 4, nonetheless observed that those courts finding such an equitable authority to exist have applied the four-factor test set out in *In re At Homes Corp.,* 392 F.3d 1064 (9th Cir. 2004), to determine whether "exceptional circumstances" justify retroactive rejection. *See* May 2020 Decision, at pp. 4-5. Those four factors are: "(1) whether the motion to reject the leases was filed promptly; (2) whether the debtor promptly took action to set the motion for hearing; (3) whether the debtor had vacated the premises; and (4) whether the landlord had any improper motivation in opposing rejection of the lease *nunc pro tunc*." *Id.* at p. 5.

5. After weighing the four factors against the facts presented in this case, the Court concluded in pertinent part as follows:

> It is certainly true that the Trustee now addresses a set of challenging business circumstances, only made worse by the current Covid-19 pandemic….The uncontested facts are that the Debtor's business and property remain at a number of the leasehold premises. The Landlords bear no demonstrable culpability with regard to Covid-19 impediments nor has the Trustee demonstrated bad motives or acts. The Trustee's need to examine or test the value of the Leases and control the timing of the Motion is inherent in her responsibilities and to bankruptcy process generally. Given the aforementioned, the Trustee can only partially satisfy the factors set out in *In re At Home Corp., supra*, 392 F.3d at 1072, and while those factors represent a mere starting point for the Court's consideration of whether to invoke its equitable powers, the fact that the Trustee can not meet them in their entirety is dispositive as to the request for retroactive relief in the present Motion. Under these circumstances, a *nunc pro tunc* order rejecting the Leases as of the petition date is a particularly blunt instrument, one that would seem to disregard, not only the express language of section 365(d)(4), but the factual realities reflected in the record. The invocation of the Court's equitable powers should be reserved for those truly exceptional circumstances, and although the Trustee has made a diligent effort here, these circumstances, predicated on the proffer of the Trustee, do not rise to that level.

May 2020 Decision, at p. 7.

6. The Court accordingly granted rejection of the Leases effective May 12, 2020, and directed the Trustee to surrender possession of the items and to coordinate the removal of any remaining possessions in the premises within ten (10) business days, with the balance of items to be abandoned to the Landlords.[2]

---

[2] Subsequent to the May 2020 Order, the Trustee, along with multiple third-party consignors, coordinated with the Landlords to remove personal property from the Landlords' three showrooms. Consequently, the Landlords were

7. The Landlords have since moved for an Order directing the Trustee to pay administrative rent pursuant to Section 365(d)(3) for the post-petition, pre-rejection use of the three showrooms. Various defenses have been interposed to that motion by the Trustee. The Landlords' motion remains pending before Judge Nevins.

8. The Trustee filed the instant Motion on May 26, 2020, along with a Notice of Appeal, seeking reconsideration of this Court's May 2020 Decision and May 2020 Order.

9. The parties were heard on the threshold matters relating to reconsideration at a video hearing, which was held on July 1, 2020.

II. STANDARD OF REVIEW

As the Trustee acknowledges in her Motion, "it is well settled that the grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice." Tr. Motion, at ¶ 11; *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (*citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 2012)). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Indeed, the Trustee acknowledges that "[t]he standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Here, the

---

restored to possession on May 26, 2020, i.e., ten (10) business days after entry of the May 2020 Order.

Trustee has failed to demonstrate any basis for granting reconsideration of this Court's May 2020 Decision and Order.

At the outset, the Trustee does not claim an intervening change of controlling law, while also apparently conceding that the Court properly applied the four-factor test in *In re At Homes Corp.* in determining whether to grant retroactive rejection. Tr. Motion, at ¶ 13. Furthermore, the Trustee fails to identify any genuinely new evidence (as opposed to the present offer of a more detailed rendition of evidence previously presented) that the Court ought to consider, let alone new evidence that was unavailable at the time of the original motion. *See, e.g., In re Enron Corp.*, 2003 WL 1562202, *14 (Bankr. S.D.N.Y. Mar. 21, 2003) ("In order to obtain relief on the basis of newly discovered evidence, the moving party must demonstrate not only that the evidence existed at the time of the prior action and that it justifiably was not available to the movant . . . but also that the evidence would be admissible and of such important as probably to have changed the result in the prior action.") (*quoting Federal Insur. Co. v. Sheldon,* 222 B.R. 690, 693 (S.D.N.Y. 1998)).

Critically, the Trustee does not identify a "clear error or manifest injustice" in the Court's application of the four-factor test articulated in *In re At Homes Corp.* to the facts presented by the Trustee's Motion to Reject. "[A] finding of manifest injustice in a civil matter requires the presence of either some unfair advantage taken by an opposing party or clear inequity warranting relief." *Enron Corp. v. J.P. Morgan Sec. Inc.*, 356 B.R. 343, 363 (Bankr. S.D.N.Y. 2006). Here, the Trustee contends that "[a]lthough courts within and outside this circuit have recognized the bankruptcy court's equitable authority and discretion in granting retroactive relief as to the date of rejection . . . courts have similarly not recognized the bankruptcy court's discretion in a reduction in the amount of administrative rent once a date of rejection is established." Tr.

Motion, at ¶ 15. Moreover, the Trustee asserts that the effective date of the Court's May 2020 Order "provide[s] an inequitable windfall to all landlords including those who have not asserted objections to the Rejection Motion, and cause severe detriment to unsecured creditors to the disproportionate and exclusive benefit of the landlords." Tr. Motion, at ¶ 14. The Court firmly rejects the Trustee's argument here that because a legal outcome may create a significant administrative claim in the hierarchy of bankruptcy claims that favors the Landlords, it should find there is a manifest injustice, *per se,* to unsecured creditors.

It is hardly the province of this Court to modify the hierarchy of claims that Congress has established or the legal consequences that result from enforcing the provisions of its laws. Administrative claims, along with secured and certain other priority claims, can often impair the administration of a bankruptcy estate and its ability to afford unsecured creditors a dividend. Here, the Landlords continued to provide services to the estate through May 25, 2020, because multiple third-party consignors, as well as the Trustee, remained in possession while they removed personal property from three showrooms over the two-week period after entry of the May 2020 Order. There is nothing inequitable about fixing a rejection date to May 12, 2020, given that the Trustee had not surrendered possession until the end of that month. Indeed, a contrary result would be inequitable to the Landlords. It certainly cannot be said that a rejection date requiring the Trustee to pay administrative rent according to the language of 11 U.S.C. § 365 for May 2020 is "manifestly" unjust. As previously articulated in the May 2020 Decision, if there are legal or equitable defenses to be considered, it is incumbent of the Trustee to seek to reduce or eliminate that claim accordingly.

With respect to the Trustee's alternative argument that the Leases should at least be deemed retroactive to April 29, 2020, the filing date of the Trustee's Motion to Reject, Tr.

Motion, at ¶ 9, such an argument was never raised in the Trustee's initial Motion to Reject or briefed, and thus, as a threshold matter, the argument should not be considered for the first time on a reconsideration motion. In any event, the Trustee has failed to demonstrate the "exceptional circumstances" required under the *In re At Homes Corp.* test, let alone a "clear error" of law in how the Court applied that test so as to warrant any retroactive rejection of the Leases, whether to April 29, 2020 or to the Petition Date (as the Trustee originally requested).

The Court expressly reserved to the Trustee the right to raise any "cognizable claims, equitable adjustments, reductions or defenses with respect to the full allowance of administrative rent claims filed by the Landlords." May 2020 Decision, at pp. 7–8. This reservation of rights recognizes the distinctiveness of the nine separate leases, the applicability of different state law thereunder and the varied material facts and circumstances related to the efforts to vacate each individual leasehold premises by the Debtor and/or the Trustee. Although the Landlords deny that any reduction of their administrative rent claims is warranted, the Trustee is free to assert any arguments she may have in opposition to the Landlords' pending motion for administrative rent. Thus, there is no prejudice to the Trustee or the estate by denying reconsideration here, as the Court is free to address any of the Trustee's arguments on the merits of the Landlords' administrative rent motion. Such a process (focused on each individual leasehold) is procedurally fair, more comprehensive and less likely to raise confounding issues of res judicata, estoppel or collateral estoppel when addressed in this context.

### III.    CONCLUSION

Accordingly, for the reasons stated herein, the Trustee's Motion for Reconsideration is hereby DENIED in its entirety, and the Landlords' Objection is hereby SUSTAINED.

**IT IS SO ORDERED** at Hartford, Connecticut this 9th day of July 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut